1

2

3

4

5

6

7

8             **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  MIGUEL ANGEL CHAVEZ, JR.,              No. 2:12-CV-1809-WBS-CMK

12              Plaintiff,

13       vs.                               FINDINGS AND RECOMMENDATIONS

14  COMMISSIONER OF SOCIAL
    SECURITY,
15
                Defendant.
16
    _____/
17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20  Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's

21  cross-motion for summary judgment (Doc. 18).

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on August 11, 2009.  In the application, plaintiff claims that disability began on July 31, 2007.  Plaintiff claims that disability is caused by a combination of learning and reading impairments as well "mental problems, stress, anxiety, panic attacks when I am in crowds."  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 3, 2011, before Administrative Law Judge ("ALJ") Timothy S. Snelling.   In an April 18, 2011, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1.     The claimant has the following severe impairment(s): anxiety disorder with panic episodes; somatoform disorder, not otherwise specified; personality disorder, not otherwise specified; bipolar disorder; learning disorder; and developmental reading disorder;
>
> 2.     The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3.     The claimant has the following residual functional capacity: the claimant can perform a full range of work at all exertional levels but the claimant is unable to understand, remember, or complete detailed or complex job tasks, and he is limited to no more than frequent interaction with the general public; and
>
> 4.     Considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of performing his past relevant work as a dishwasher and hotel housekeeper.

After the Appeals Council declined review on May 22, 2012, this appeal followed.

# II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  <u>See</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  <u>See</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  <u>See</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to articulate sufficient reasons for rejecting the opinion of the agency examining mental health professionals; (2) the ALJ failed to articulate sufficient reasons for findings plaintiff not credible; (3) the ALJ failed to articulate sufficient reasons for rejecting lay witness evidence; (4) the ALJ failed to acknowledge evidence that all of plaintiff's past relevant work was performed below substantial gainful levels; and (5) the Appeals Council erred by failing to remand for consideration of new evidence.

/ / /

/ / /

/ / /

/ / /

1    A.    **Plaintiff's Credibility**

2           The Commissioner determines whether a disability applicant is credible, and the

3    court defers to the Commissioner's discretion if the Commissioner used the proper process and

4    provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

5    credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

6    F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

7    821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

8    and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

9    evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

10   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

11   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

12   and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

13          If there is objective medical evidence of an underlying impairment, the

14   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

15   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

16   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

17                  The claimant need not produce objective medical evidence of the
                    [symptom] itself, or the severity thereof.  Nor must the claimant produce
18                  objective medical evidence of the causal relationship between the
                    medically determinable impairment and the symptom.  By requiring that
19                  the medical impairment "could reasonably be expected to produce" pain or
                    another symptom, the Cotton test requires only that the causal relationship
20                  be a reasonable inference, not a medically proven phenomenon.

21          80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
            Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
22

23          The Commissioner may, however, consider the nature of the symptoms alleged,

24   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

25   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

26   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").   Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

1   Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

2           As to plaintiff's credibility, the ALJ stated:

3           The claimant, born on March 28, 1980, is currently thirty-one years old.
            He alleges an onset date of disability of July 31, 2007.  His alleged
4           impairments include stress, anxiety, panic attacks, mental problems, and
            the inability to read or write.  The claimant lives in a house with his two
5           younger brothers, ages eighteen and sixteen.  He alleges that he cares for
            his two younger brothers, but he qualifies his answer, indicating that his
6           boyfriend does everything that his brothers need.  Additionally, his
            boyfriend assists him with everything in relation to reading and writing.
7           His conditions affect his sleep.  He claims that he requires encouragement
            to complete tasks; otherwise, he gets angry or upset.  The claimant alleges
8           that he only goes outside when it is necessary.  He claims that his
            condition affects his memory, concentration, and understanding as well as
9           his ability to complete tasks and get along with others [Exhibit 7E].

10          In an updated Disability Report, the claimant alleges that as of fall of
            2009, he could no longer drive due to vision problems.  Additionally, he is
11          experiencing pain in his wrists, severe memory loss, bowel problems, and
            foot problems.  He claims that he no longer leaves the house during the
12          daytime due to his aversion to crowds and his irritability around people.
            he claims that his significant other does all the chores because he has no
13          patience [Exhibit 9E].  In another updated Disability Report, the claimant
            alleges that he is experiencing left leg pain.  he claims that if someone
14          does not do his shopping and chores, then he does them at night when
            there are not a lot of people around.  He claims that he needs to be
15          evaluated for psych medications, but he had not yet gone to the mental
            health place [Exhibit 11E].

16                          * * *

17
            After careful consideration of the evidence, I find that the claimant's
18          medically determinable impairments could reasonably be expected to
            cause the alleged symptoms; however, the claimant's statements
19          concerning the intensity, persistence, and limiting effects of these
            symptoms are not credible to the extent they are inconsistent with the
20          above residual functional capacity assessment.

21          The claimant has described daily activities which are not limited to the
            extent one would expect, given the complaints of disabling symptoms and
22          limitations.  The claimant testified that he has been caring for his two
            younger brothers since their mother passes away ten years ago.  He claims
23          that he is able to care for his personal hygiene, prepare simple meals, and
            shop in stores for household supplies.  While he, additionally, alleges that
24          his boyfriend, Mr. Custer, cared for his brothers and performed most of the
            household chores, he also testified that his boyfriend left him, implying
25          that his support is no longer available [Exhibit 7E].  Furthermore, the
            claimant informed Dr. Wakefield that he was obsessive about cleaning the
26          house and that he cooked dinner and washed the dishes [Exhibit 2F].

Overall, the claimant's varied activities of daily living are inconsistent with a complete inability to perform substantial gainful activity.

The record reflects work activity after the alleged onset date. The County Family Resource and Referral Center paid the claimant $6.00 an hour for babysitting services, beginning in January of 2007. The claimant babysat his brother's two children in his home for approximately thirty-two hours a week [Exhibit 1E]. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have been somewhat greater than the claimant has generally reported. Additionally, the claimant completed the Cal Works program in January of 2010 [Exhibit 9E]. Holding himself out as ready, willing, and able to work contradicts the claimant's allegations of disability.

According to Mr. Custer, the claimant's allegedly disabling impairments were present at approximately the same level of severity through the eight years that he knew the claimant, which is prior to the alleged onset date [Exhibit 5E].

Additionally, the claimant's alleged onset date of July 31, 2007, is two years prior to when he first sought out mental health treatment in September of 2009 [Exhibit 8F]. The claimant's lack of specialty treatment is inconsistent with his allegations of disability.

Lastly, while the claimant clearly has a learning disability and he did participate in special education, school records also indicate that from 1985 to 1993 the claimant transferred schools seven times, was held back a grade three times, and was dropped due to poor attendance twice. The fact that he did not attend school regularly, was not properly administered his medication as a child, and dropped out in the seventh grade added to his inhibited ability to learn [Exhibits 21F and 22F].

Plaintiff argues that the reasons articulated by the ALJ are not supported by substantial evidence.

The court does not agree. Here, the ALJ appropriately considered plaintiff's work records in noting that plaintiff worked after the alleged onset date. The ALJ also properly considered plaintiff's lack of treatment for any mental health impairment until September 2009 – over two years after the alleged onset date. The ALJ also considered other inconsistencies in the record. In particular, plaintiff's boyfriend testified that plaintiff's level of impairment was about the same the entire time he knew the plaintiff, some of which preceded the alleged onset date. This suggests that plaintiff's functioning was the same before and after the alleged onset date, which is inconsistent with plaintiff's claim of a disability beginning in July 2007. In other

1  words, if plaintiff was so severely limited as to be disabled the entire time he knew his boyfriend,

2  one would expect plaintiff to claim an earlier onset date.  The ALJ appropriately resolved this

3  inconsistency, among others, in concluding that plaintiff's claims of disabling symptoms is not

4  credible.

5  **B.**  **Evaluation of Medical Opinions**

6  Plaintiff argues that the ALJ failed to articulate sufficient reasons for rejecting the

7  opinions contained in a single report prepared by James Wakefield, Jr., Ph.D., and Robert L.

8  Mattesich, LEP, agency examining mental health professionals.

9  The weight given to medical opinions depends in part on whether they are

10  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

11  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

12  professional, who has a greater opportunity to know and observe the patient as an individual,

13  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

14  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

15  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

16  (9th Cir. 1990).

17  In addition to considering its source, to evaluate whether the Commissioner

18  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

19  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

20  uncontradicted opinion of a treating or examining medical professional only for "clear and

21  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

22  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

23  by an examining professional's opinion which is supported by different independent clinical

24  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

25  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

26  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining

professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

       As to the report prepared by Dr. Wakefield and Mr. Mattesich, the ALJ stated:

> . . . James A. Wakefield, Jr. Ph.D., State agency psychological consultant, evaluated the claimant on September 11, 2009.  The claimant drove himself to the appointment.  Dr. Wakefield observed that the claimant's mood varied throughout the examination.  he was easily frustrated and had a low threshold for stress.  The claimant achieved a General Memory Index of 60 on the Wechsler Memory Scale-III, indicating a significant impairment in his memory skills.  His Full-Scale IQ Score on the Wechsler Adult Intelligence Scale-IV was a 63, placing him within the mildly mentally retarded range.  However, Dr. Wakefield viewed the claimant's results from the standardized tests as an under-estimation of his potential due to the influences of his emotional impairment.  In addition, the claimant was able to compute simple math word problems and engage in simple reasoning on an abstract level.  Furthermore, he exhibited a functional usage of language and was able to comprehend oral directives and formulate verbal responses.  Dr. Wakefield diagnosed anxiety disorder with panic episodes, rule out bipolar disorder, learning disorder, and cognitive disorder related to emotional impairment [Exhibit 2F].

>                * * *

> Dr. Wakefield opined that at the time, the claimant did not appear capable of understanding, carrying out, and remembering simple instructions.  The doctor found that he was not capable of responding appropriately to coworkers, supervisors, or the public.  Additionally, he was not capable of handling benefit payments in his best interests [Exhibit 2F].  Dr. Wakefield's opinion is given reduced weight because the claimant's activities of daily living show that he is able to function at home and earn money and they do not support such severe mental limitations.  Additionally, the doctor's own evaluation showed positive objective

findings.  Furthermore, Dr. Wakefield did not review the claimant's file as no evidence had yet been submitted and the claimant had not received any mental health treatment until after this evaluation.

The court finds no error in the ALJ's analysis.  Initially, the court notes that Dr. Wakefield's opinion is contradicted in that, while he opined that plaintiff has severe mental limitations, Dr. Haroun – an agency psychiatric consultant – did not.  As to the reasons provided by the ALJ for rejecting Dr. Wakefield's opinion, the court finds that they are specific and legitimate and supported by substantial evidence.  In particular, plaintiff's daily activities (discussed above) indeed indicate a level of functioning which would be precluded under Dr. Wakefield's assessment of plaintiff's capabilities.  As the ALJ noted, plaintiff took steps to prepare for work by completing the Cal Works program in January 2010.[1]  Further, as the ALJ also noted, Dr. Wakefield observed positive findings, such as plaintiff's ability to compute simple math word problems and engage in simple reasoning on an abstract level.  Plaintiff also exhibited a functional usage of language and was able to comprehend oral directives and formulate verbal responses.  The doctor himself noted that test results reflected an under-estimation of plaintiff's potential.  Finally, it cannot be disputed that Dr. Wakefield did not have access to any mental health treatment records at the time of his evaluation in early September 2009 because none existed.

/ / /

/ / /

/ / /

/ / /

---

[1]    This fact is also notable in the general time line of plaintiff's alleged mental disability.  Plaintiff claims that his disability began in July 2007.  Given that he did not first seek out mental health treatment until September 2009, mental limitations could not have been the cause of his alleged disability, at least when plaintiff claims it began in July 2007.  Thus, the basis of plaintiff's claim as to mental limitations must be that his mental condition became disabling around September 2009 when he first sought treatment.  However, plaintiff completed the Cal Works program in January 2010, indicating that he had a functional level of mental capability after September 2009.

### C.   <u>Lay Witness Evidence</u>

Plaintiff argues: (1) while the ALJ summarized lay witness evidence from plaintiff's boyfriend, William Custer, the ALJ did not articulate specific reasons for rejecting his statements; and (2) the ALJ completely ignored lay witness evidence in the form of a report prepared by an agency interviewer, E. Gomez.

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work.  <u>See</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment."  <u>See</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  <u>Dodrill</u>, 12 F.3d at 919.  The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  <u>See</u> <u>Valentine v. Commissioner Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

The ALJ, however, need not discuss all evidence presented.  <u>See</u> <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain why "significant probative evidence has been rejected."  <u>Id.</u> (citing <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative.  <u>See id.</u> at 1395.  As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision.  <u>See id.</u>  As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court

1   concluded that the evidence was properly ignored because it "conflicted with the available

2   medical evidence" assessing the plaintiff's mental capacity.  Id.

3         In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent

4   disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness

5   had testified about the plaintiff's "inability to deal with the demands of work" due to alleged

6   back pain and mental impairments.  Id.   The witnesses, who were former co-workers testified

7   about the plaintiff's frustration with simple tasks and uncommon need for supervision.  See id.

8   Noting that the lay witness testimony in question was "consistent with medical evidence," the

9   court in Stout concluded that the "ALJ was required to consider and comment upon the

10  uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to

11  work."  Id. at 1053.   The Commissioner conceded that the ALJ's silent disregard of the lay

12  testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth

13  Circuit rejected the Commissioner's request that the error be disregarded as harmless.  See id. at

14  1054-55.  The court concluded:

15         Because the ALJ failed to provide any reasons for rejecting competent lay
           testimony, and because we conclude that error was not harmless,
16         substantial evidence does not support the Commissioner's decision . . .

17         Id. at 1056-67.

18         From this case law, the court concludes that the rule for lay witness testimony

19  depends on whether the testimony in question is controverted or consistent with the medical

20  evidence.  If it is controverted, then the ALJ does not err by ignoring it.  See Vincent, 739 F.2d at

21  1395.  If lay witness testimony is consistent with the medical evidence, then the ALJ must

22  consider and comment upon it.  See Stout, 454 F.3d at 1053.  However, the Commissioner's

23  regulations require the ALJ consider lay witness testimony in certain types of cases.  See Smolen

24  v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13.  That ruling requires the ALJ to

25  consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that

26  are not shown by the medical evidence.  See id.  Thus, in cases where the plaintiff alleges

1   impairments, such as chronic fatigue or pain (which by their very nature do not always produce

2   clinical medical evidence), it is impossible for the court to conclude that lay witness evidence

3   concerning the plaintiff's abilities is necessarily controverted such that it may be properly

4   ignored.  Therefore, in these types of cases, the ALJ is required by the regulations and case law to

5   consider lay witness evidence.

6           Regarding evidence from plaintiff's boyfriend, Mr. Custer, the ALJ stated:

7           William Custer, the claimant's boyfriend, filled out a Third Party Function
        Report on behalf of the claimant on August 26, 2009.  Mr. Custer claimed
8       that the claimant cared for his two younger brothers with his help.  He
        claimed that he helped him with anything having to do with reading and
9       writing.  Mr. Custer primarily corroborated the claimant's allegations that
        he was unable to handle stress well, he got angry easily, and he lacked the
10      ability to maintain concentration [Exhibit 5E].

11                      * * *

12          According to Mr. Custer, the claimant's allegedly disabling impairments
        were present at approximately the same level of severity throughout the
13      eight years that he knew the claimant. . . . [Exhibit 5E].

14  Plaintiff argues: "While the ALJ referenced this [Third Party Function Report], he provided no

15  reasons whatsoever for his obvious rejection of this evidence."  The court does not find any error.

16  The ALJ noted that Mr. Custer's report corroborated plaintiff's allegations of disabling

17  symptoms, which the ALJ found to be not credible.  Thus, it is clear that the ALJ properly

18  rejected Mr. Custer's statements for the same reasons.[2]

19          Plaintiff also argues that the ALJ erred by failing to note plaintiff's behavior

20  during a social security interview as documented by the interviewer, E. Gomez.   The record

21  / / /

22

23      [2]    Plaintiff does not argue that the ALJ's failure to specifically state that Mr.
    Custer's statements were being rejected for the same reasons as for rejecting plaintiff's
24  statements constituted error.  In any event, such error would be harmless.  See Stout v.
    Commissioner of Social Security, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding that error is
25  harmless if no reasonable ALJ, when fully crediting the testimony, could have reached a different
    disability determination); see also Robbins v. Social Security Administration, 466 F.3d 880, 885
26  (9th Cir. 2006) (citing Stout, 454 F.3d at 1056).

reflects that agency interviewer E. Gomez reported in August 2009 the following:

> [Claimant] came into the office by himself, he was in tears because he was late for his appointment. He stated that he was in a panic because he could not wait in the lobby with all the people. He talked a lot, going over and over about his problems. He stated that he was gay and his partner was leaving him after about 6 years, he was upset because he helped him a lot. He stated he cared for two of his younger brothers and was overwhelmed because he was going to have to care for them himself. He stated he has had an eating disorder and throws up a lot. He was groomed and clean. He had to stand up two times during the interview and looked around. He talked a lot. Sometimes I had to redirect him to answer the question.

The court finds no error in the ALJ's silent disregard of this evidence, which is neither significant nor probative of plaintiff's level of functioning given that it is a one-time observation made by someone who is not a medical professional or who knows plaintiff. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

### D.   Plaintiff's Past Relevant Work

As to plaintiff's ability to perform his past relevant work, the ALJ stated:

> The claimant previously worked as a dishwasher. . ., which is a medium exertion level job that has a specific vocational preparation level of 2 and can be learned in one month. The claimant performed this job at a light level for one year [Exhibit 4E] and was compensated at above SGA levels during that time [Exhibit 3D]. Because the claimant performed this job recently, did so long enough to learn it, and was compensated for it at above SGA levels, it qualifies as past relevant work within the meaning of 20 CFR 404.1565 and 416.965.

> The claimant also previously worked as a hotel housekeeper. . ., which is a heavy exertion level job that has a specific vocational preparation level of 2 and can be learned in one month. The claimant performed this job at a medium level for one year [Exhibit 4E] and was compensated at above SGA levels during that time [Exhibit 3D]. Because the claimant performed this job recently, did so long enough to learn it, and was compensated for it at above SGA levels, it qualifies as past relevant work within the meaning of 20 CFR 404.1565 and 416.965.

> In comparing the claimant's residual functional capacity with the physical and mental demands of the work described above, I find that the claimant is able to perform the jobs as actually and generally performed. The jobs are performed at the medium and heavy exertional levels in the national economy, and they were performed at the light and medium levels by the claimant. As the claimant is capable of a full range of work with no exertional limits, neither type of performance is precluded by the

14

1   claimant's residual functional capacity.

2   Plaintiff argues that the ALJ erred by failing to consider evidence that, because he was allowed to

3   perform his past work under special conditions, the presumption that such work was performed

4   at the substantial gainful level is rebutted.

5          The court finds no error.  First, as defendant observes, the only evidence that

6   plaintiff performed his past work under special conditions which would rebut the presumption

7   that such work was performed at or above the substantial gainful level comes from his own

8   testimony which the ALJ appropriately found to be not credible.  Second, even if believed,

9   plaintiff's testimony on the issue of special conditions is insufficient given the he testified about

10  specific and limited instances, such as when his manager would have to "calm him down" at

11  times following his mother's death, yet was able to hold his past jobs for years at a time.

12       **E.    Newly Submitted Evidence**

13         Plaintiff argues that the Appeals Council erred by failing to remand based on new

14  evidence.[3]  A case may be remanded to the agency for the consideration of new evidence if the

15  evidence is material and good cause exists for the absence of the evidence from the prior record.

16  See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987)

17  (citing 42 U.S.C. § 405(g)).  In order for new evidence to be "material," the court must find that,

18  had the agency considered this evidence, the decision might have been different.  See Clem v.

19  Sullivan, 894 F.2d 328, 332 (9th Cir. 1990).  The court need only find a reasonable possibility

20  that the new evidence would have changed the outcome of the case.  See Booz v. Secretary of

21  Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  The new evidence,

22  however, must be probative of the claimant's condition as it existed at or before the time of the

23  disability hearing.  See Sanchez 812 F.2d at 511 (citing 42 U.S.C. § 416(i)(2)(G)).  In Sanchez,

24

---

25         [3]     The new evidence – a 2011 report prepared by Robert L. Mattesich, a licensed
26  educational psychologist – was not made a part of the administrative record because it relates to a
    time period following the ALJ's decision.

1  the court concluded that the new evidence in question was not material because it indicated "at

2  most, mental deterioration after the hearing, which would be material to a new application, but

3  not probative of his condition at the hearing." Id. at 512 (citing Ward v. Schweiker, 686 F.2d

4  762, 765-66 (9th Cir. 1982)).

5          The court finds no basis for a remand to consider the 2011 report because it is not

6  probative of plaintiff's condition as it existed at or before the time of the administrative hearing.

7  As the court noted in Sanchez, the 2011 report may be evidence to support a new application

8  based on mental deterioration.

9

10                          **IV.  CONCLUSION**

11          Based on the foregoing, the court concludes that the Commissioner's final

12  decision is based on substantial evidence and proper legal analysis.  Accordingly, the

13  undersigned recommends that:

14          1.      Plaintiff's motion for summary judgment (Doc. 17) be denied; and;

15          2.      Defendant's cross-motion for summary judgment (Doc. 18) be granted.

16          These findings and recommendations are submitted to the United States District

17  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

18  after being served with these findings and recommendations, any party may file written

19  objections with the court.  Responses to objections shall be filed within 14 days after service of

20  objections.  Failure to file objections within the specified time may waive the right to appeal.

21  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22

23    DATED:  March 6, 2014

24                                                    _____
                                                      **CRAIG M. KELLISON**
25                                                    UNITED STATES MAGISTRATE JUDGE

26